# In the United States Court of Federal Claims

No. 05-410 C
(Filed: December 31, 2008)

| | | |
|---|---|---|
| *************************************** | | |
| MARIO R. LOPEZ-VELAZQUEZ, | * | Motion to Remand to the Air Force Board |
| | * | for Correction of Military Records for an |
| Plaintiff, | * | Evidentiary Hearing; Motion to Dismiss; |
| | * | Cross-Motions for Judgment on the |
| v. | * | Administrative Record; Air Force Discharge |
| | * | Review Board; Ineffective Assistance of |
| THE UNITED STATES, | * | Counsel; Separation in Lieu of Court- |
| | * | Martial; Voluntariness |
| Defendant. | * | |
| *************************************** | | |

Gary Myers, Weare, NH, for plaintiff.

Michael J. Dierberg, United States Department of Justice, Washington, DC, for defendant.

## OPINION

**SWEENEY**, Judge

Before the court in the above-captioned case are plaintiff's motion to remand the case to the Air Force Board for Correction of Military Records ("AFBCMR") for an evidentiary hearing, defendant's motion to dismiss, and the parties' cross-motions for judgment on the administrative record. Plaintiff alleges that he was provided ineffective assistance of counsel while facing a possible court-martial and that as a result, he administratively separated from the military in lieu of the court-martial against his wishes. The motions before the court present two issues: (1) whether the AFBCMR improperly denied plaintiff an evidentiary hearing and (2) whether plaintiff was provided ineffective assistance of counsel. For the reasons set forth below, the court denies plaintiff's motion for remand, grants defendant's motion to dismiss and motion for judgment on the administrative record, and denies plaintiff's motion for judgment on the administrative record.

# I. BACKGROUND[1]

## A. Plaintiff's Criminal Charges and Subsequent Discharge Request

Plaintiff enlisted in the United States Air Force ("Air Force") on March 16, 1982, and eventually rose to the rank of Technical Sergeant.  AR 529.  In the fall of 2000, plaintiff was stationed at Grand Forks Air Force Base in North Dakota as part of the 319 Security Forces Squadron.  Id. at 197, 529.  On September 22, 2000, the Air Force Office of Special Investigations began to explore allegations that plaintiff sexually assaulted another member of the 319 Security Forces Squadron.  Id. at 114, 359.  Four days after the commencement of the investigation–on September 26, 2000–investigators sought to interview plaintiff concerning these allegations.  Id. at 366.  After being advised of his rights, plaintiff requested counsel, and the investigators provided him with the telephone number of Area Defense Counsel, id., Captain Steven T. Brand, id. at 33.  On October 2, 2000, plaintiff met with Captain Brand and the two entered into an attorney-client relationship.  Id.  It appears from the record that Captain Brand had become aware of the allegations against plaintiff about a week prior to the meeting.  Id.

Ultimately, on November 21, 2000, the commander of the 319 Security Forces Squadron, Major Rickey H. Turner, preferred charges against plaintiff, alleging multiple violations of the Uniform Code of Military Justice ("UCMJ").  Id. at 418-19, 502.  Specifically, plaintiff was charged with three specifications of cruelty and maltreatment under UCMJ Article 93, one specification of forcible sodomy under UCMJ Article 125, five specifications of assault under UCMJ Article 128, and one specification of indecent assault under UCMJ Article 134.  Id.; see also 10 U.S.C. §§ 893, 925, 928, 934 (2000) (defining the charges).  The charges involved four female airmen serving in the 319 Security Forces Squadron.  AR 359, 363, 366, 418-19.  Major Turner notified plaintiff of the charges against him that day.  Id. at 420.  Then, on November 22, 2000, the charges were referred for trial by special court-martial.  Id.  The referred charges were formally served on plaintiff on November 27, 2000.  Id.

According to Captain Brand, as related in a July 30, 2001 sworn statement, when he "first encountered plaintiff's case," he and plaintiff "immediately began discussing potential options," ultimately narrowing the options down to requesting an administrative discharge from the Air Force in lieu of a court-martial pursuant to Chapter 4 of Air Force Instruction 36-3208, Administrative Separation of Airmen, or "fully litigating all charges and specifications against" plaintiff.[2]  Id. at 178; see also id. at 165-66 (identifying the full title of the relevant instruction).  If plaintiff opted to pursue a Chapter 4 discharge, it was possible that the discharge would be characterized as under other than honorable conditions.  Id. at 165, 178.  In fact, during his

---

[1]  The court derives the facts in this section from the Complaint ("Compl.") filed on March 29, 2005, and the Corrected Administrative Record ("AR") filed on March 11, 2008.

[2]  The record lacks any indication whether these discussions occurred before or after plaintiff was formally charged.

discussions with the base's legal office, Captain Brand learned that if plaintiff was discharged pursuant to Chapter 4, the discharge would be under other than honorable conditions. Id. at 178. As noted in an undated addendum to his sworn statement, Captain Brand also learned from the base's legal office that "to have any shot of having the Chapter 4 request granted, [plaintiff] would have to waive his right to a lengthy service determination."[3]  Id. at 177.  Plaintiff indicated in a June 26, 2001 electronic mail message that he had read Chapter 4 of Air Force Instruction 36-3208 because he had "started asking questions about lengthy service review and classification of discharge." Id. at 190.

In addition to submitting discovery requests to the government on November 27, 2000, id. at 161-64, Captain Brand and his paralegal, Staff Sergeant Carolyn Johnson, "began investigating the case . . . as if [they] were going to fully litigate the case," interviewing "numerous witnesses (near 20) regarding the complainants' characters for truthfulness and surrounding facts and circumstances of the individual offenses charged."[4] Id. at 178; see also id. at 193 (containing Staff Sergeant Johnson's representation that she and Captain Brand interviewed the four alleged victims and at least twenty-eight additional witnesses); cf. id. at 193 (containing Staff Sergeant Johnson's representation that Captain Brand also asked her to obtain a roster of the 319 Security Forces Squadron and arrange to interview each member of the squadron, but that Captain Brand's request was ultimately mooted by the approval of plaintiff's Chapter 4 discharge request).  But see id. at 275-76 (containing plaintiff's statements, from a document prepared in February 2007, that "at no time did Capt[.] Brand discuss with [plaintiff] during [their] routine meetings the number of personnel he interviewed other than the four alleged victims" and that it was not until after December 7, 2000, that Captain Brand indicated a desire to prepare plaintiff's case for trial).  Captain Brand indicated in his sworn statement that he and Staff Sergeant Johnson discovered "several" witnesses who would testify that "two of the complainants had the reputation for being dishonest," but that they "kept running into the fact that one to two of the complainants were credible," which caused them to worry about "the potential spillover effect of their testimony to the other charges and specifications . . . ." Id. at 178.  However, plaintiff's recollection of Captain Brand's efforts in investigating his case

---

[3]  According to Chapter 6 of Air Force Instruction 36-3208, airmen who have completed between sixteen and twenty years of active duty service "are entitled to special consideration for probation upon their request," which may result in "[a]n offer of probation for the time the airman needs to get minimum retirement eligibility . . . ."

[4]  The record, including Captain Brand's July 30, 2001 sworn statement from which these assertions are quoted, lacks any representations from Captain Brand concerning the date that he and Staff Sergeant Johnson began these investigations.  However, Staff Sergeant Johnson, in her July 27, 2001 sworn statement, indicates that they were preparing plaintiff's case both "before and after preferral of charges" by collecting all of plaintiff's awards, decorations, and letters of appreciation from plaintiff and his wife, preparing a letter for plaintiff to provide to possible character witnesses, and "doing everything possible to get as much as [they] could to use in his trial." AR 193.

conflict with those of Captain Brand and Staff Sergeant Johnson, as reflected in his June 26, 2001 electronic mail message:

> I gave him a list of individuals I wanted him to talk to but he didn't call them until I questioned him repeatedly why he didn't.  He told me to start a notebook and write down everything I could remember about the girls.  He never looked at it.  I also had copies of my leave forms, [temporary duty] days, and old post schedule [that] I felt would discredit the girls['] stories, but he never looked at that either.  Before I signed the Chapter 4, I asked him to request my phone bills, copies of tickets I had written, and copies of the daily blotters because I felt that could establish my daily routine but he said what would that prove?  After I signed my Chapter 4, I reengaged him about the phone bills, tickets, and blotters and he said he would request them.[5]  I never saw them.

Id. at 191-92 (footnote added).

Upon the establishment of their attorney-client relationship, Captain Brand set up a standing weekly appointment (Mondays at 10:00 a.m.) with plaintiff to meet and discuss his case.  Id. at 178, 193, 202.  In addition to this standing appointment, plaintiff often went to see Captain Brand without an appointment to discuss the case.  Id. at 178, 193.  According to plaintiff's own recollection, taken from his June 26, 2001 electronic mail message, Captain Brand informed him at some point that if plaintiff proceeded to trial, "there was only a 5% chance [he] would be found not guilty" and that Captain Brand "felt very strongly that [he] would be found guilty of something."  Id. at 191.  But see id. at 190-91 (containing plaintiff's averment, taken from the same electronic mail message, that Captain Brand never discussed the strengths and weaknesses of his case with him).  Plaintiff also recalled that Captain Brand represented that if he was found guilty with respect to the indecent assault charge, he would need to register as a sex offender and that this possibility caused him to "worr[y] about the welfare of [his] wife and son."  Id. at 191.  Indeed, Captain Brand indicated in his sworn statement that plaintiff's "biggest fear by far was registering as a sex offender since he did not want major repercussions for his wife and son" and that plaintiff "consistently maintained that he could recover from a[n under other than honorable conditions] discharge but not from a sex offense conviction."  Id. at 178; see also id. at 175 (indicating plaintiff's concern, as recorded by Captain Brand in December 2000, that he might have to register as a sex offender if convicted in a court-martial).  But see id. at 190 (containing plaintiff's assertion, taken from his June 26, 2001 electronic mail message, that Captain Brand was the one who told plaintiff that with an under other than honorable conditions discharge, plaintiff "could recover and still pursue a career in law enforcement"); accord id. at 276 (containing a document prepared by plaintiff in February 2007).  Captain Brand also represented that at these meetings, he and plaintiff discussed the consequences of the Air Force approving a Chapter 4 discharge request in plaintiff's situation, including the loss of retirement benefits

---

[5]  There is no indication in the record that Captain Brand requested these documents from the government.

resulting from the waiver of the lengthy service determination, the loss of any veterans benefits, and the lack of certainty regarding future job prospects for someone discharged under other than honorable conditions.[6] Id. at 177-78; see also id. at 191 (containing plaintiff's averment, taken from his June 26, 2001 electronic mail message, that he "was upset about giving up [his] retirement benefits that [he] worked for 18 years 10 months towards," but that Captain Brand responded that "all [he] was really giving up was the retirement check but up until that point [he] was paid for the job [he] did"); cf. id. at 190 (containing plaintiff's assertion, taken from the same electronic mail message, that Captain Brand never discussed with him other consequences, such as being barred from base or ineligible to draw unemployment benefits). But see id. at 275 (containing plaintiff's statements, from a document prepared in February 2007, that prior to December 8, 2000, he and Captain Brand had "never discussed Lengthy Service Review" and that Captain Brand "never briefed [him that he] would lose [his] veteran benefits"[7]).

In his June 26, 2001 electronic mail message, plaintiff represented that his "major concern" with pursuing a Chapter 4 discharge and being discharged under other than honorable conditions was whether he would "be able to pursue a career in law enforcement," but that Captain Brand "kept assuring [him that] it could be done." Id. at 191. Captain Brand specifically recalled discussing with plaintiff the possibility of future law enforcement employment with an under other than honorable conditions discharge:

> I told [plaintiff] several times that no one could fully quantify the impact of a[n under other than honorable conditions] discharge. I told him that it would not hurt him as much applying for jobs in urban areas (where the military is more of a foreign entity (except Washington D.C.)), as it would at areas of the country very familiar with the military and which are located near military installations. I told him that I had heard of one attorney's client who went on to be a cop after a[n under other than honorable conditions discharge,] but that he would have to do some explaining to any future employer about the facts and circumstances surrounding his discharge characterization. I called my mother[,] who is the director of the Correctional Education Consortium (a consortium designed to place ex-offenders and drug and alcohol rehab recoveries in colleges and jobs) in New York, New York, in an attempt to find out from one of the more well-known police forces the potential impact of a[n under other than honorable conditions discharge] on a candidate for the NYPD. My mother contacted the NYPD hiring department and was told that the only disqualifier they have is a dishonorable discharge (when it comes to discharge characterization); everything else is handled on a case-by-case basis. I relayed this information to [plaintiff]. No

---

[6]  There is no indication in the record of the date or dates of the meeting or meetings at which Captain Brand and plaintiff discussed these topics.

[7]  These February 2007 statements conflict with those statements made by plaintiff in his December 7, 2000 Chapter 4 discharge request. See AR 165.

assurances were ever given regarding [plaintiff]'s prospects for future
employment.

Id. at 178; see also id. at 190 (containing plaintiff's assertion, taken from his June 26, 2001
electronic mail message, that Captain Brand "said he knew an individual that did get a job in law
enforcement" with an under other than honorable conditions discharge), 193 (containing Staff
Sergeant Johnson's representation that she recalled Captain Brand informing plaintiff that "even
with receiving an [under other than honorable conditions] discharge[,] there was a chance that he
could still get hired on in a law enforcement career" and that "the bigger areas, like New York
area[,] may possibly still hire him"). But see id. at 275 (containing plaintiff's statement, from a
document prepared in February 2007, that Captain Brand "never told me a[n under other than
honorable conditions] discharge probably would not hurt [illegible] as much in an urban area as
compared to an area near a military installation or an area familiar with the military").
Altogether, Captain Brand stated that he recommended that plaintiff seek a Chapter 4 discharge,
telling plaintiff that "although the effects of a[n under other than honorable conditions discharge
were] not good, that it [was] still better than a conviction that could require registering as a sex
offender and better than a Bad Conduct Discharge." Id. at 178. According to Captain Brand,
plaintiff "would always agree with my analysis" and "just kept saying how hard it was for him
not to fight and to take the easy way out," but that "weighing all the consequences[,] he thought it
was the best thing" and "the least risky option."[8] Id. at 179. Plaintiff viewed these conversations
differently, claiming, in his June 26, 2001 electronic mail message: "Yes, I informed [Captain
Brand] of my concerns. In fact I kept telling him I wanted to go to court and fight but he kept
telling me it was my pride talking and kept saying I would be found guilty of something." Id. at
191.

     Plaintiff eventually decided to seek the advice of civilian counsel located in downtown
Grand Forks, North Dakota. See id. at 179 (sworn statement of Captain Brand), 193 (sworn
statement of Staff Sergeant Johnson), 275 (containing plaintiff's statement, in a document
prepared in February 2007, that "[s]ometime between 27 Nov and 6 Dec," he "went to see a
civilian attorney about [his] case"); see also id. at 215 (containing plaintiff's November 22, 2002
testimony that his wife sought out the civilian counsel). In his sworn statement, Captain Brand
indicated that plaintiff made the decision "[t]oward the beginning of December" and that,
"[a]bout a week later," plaintiff told him that "the civilian attorney reviewed the evidence against
him and advised him to take the chapter 4." Id. at 179; see also id. at 193 (containing Staff

---

     [8] In her sworn statement, Staff Sergeant Johnson described a meeting between plaintiff
and Captain Brand that occurred "before [plaintiff] went on leave," at which Captain Brand and
plaintiff were discussing whether plaintiff wanted to proceed with submitting a Chapter 4
discharge request. AR 194. Staff Sergeant Johnson indicated that Captain Brand told plaintiff
that it was plaintiff's decision to make and that he was willing to go to trial if plaintiff so desired.
Id. She then wrote: "As [plaintiff] was walking out the door, he was still talking and finally
while standing in the doorway said no, and told us to go ahead with the Chapter 4. He left us
with his phone number of where he would be at on leave." Id.

Sergeant Johnson's representation that the civilian attorney "suggested" that plaintiff "take the Chapter 4"). Plaintiff's wife, in November 22, 2002 testimony, tells a different tale, claiming that civilian counsel advised her that the Air Force's convening of a special court-martial "was [their] way of admitting they had no case against [her] husband . . . ." Id. at 216. She then indicated that she and her husband decided not to retain civilian counsel for two reasons: (1) they could not afford counsel's $15,000 retainer and (2) Captain Brand advised them that "civilian attorneys do a worse job than an active duty [attorney]" and plaintiff would receive "worse punishment" with a civilian attorney. Id.

In any event, on December 7, 2000, plaintiff submitted, pursuant to Chapter 4 of Air Force Instruction 36-3208, a signed Request for Discharge in Lieu of Trial by Court-Martial to his command.[9] Id. at 165. In his request, plaintiff represented, among other things, that he understood (1) the elements of the charged offenses; (2) that he could "be discharged under other than honorable conditions"; (3) the possible consequences of such an adverse discharge, including the loss of veterans' benefits; and (4) that if tried by a special court-martial, he "could receive a punitive discharge from the court." Id. Plaintiff also represented that he had "been afforded the opportunity to consult legal counsel" and that he waived any right "to request a lengthy service determination." Id. Plaintiff confirmed, in his June 26, 2001 electronic mail message, that he had thoroughly read the request before signing it, especially in light of the fact that he "kept questioning why [Captain Brand] didn't ask for [his] lengthy service review and why [his] discharge couldn't be classified as General." Id. at 190; see also id. at 191 (containing plaintiff's representation, in the same electronic mail message, that "[b]efore [he] signed the Chapter 4 letter, [he] was in [Captain Brand's] office for 2.5 hours because it took [Captain Brand] that long to convince me that was the best course of action" and that the next day, when he went to pick up a copy of the entire Chapter 4 discharge request, Captain Brand "told [him] that he couldn't sleep the night before because he was worried that [plaintiff] would change [his] mind").

Captain Brand signed the request below plaintiff's signature, indicating that "[t]he preceding statement by [plaintiff] was his voluntary decision, signed by him after I counseled him fully about his rights and privileges, the possible effects of discharge under these circumstances, and the repercussions of waiving his right to a lengthy service determination." Id. at 165. In support of plaintiff's signed request, Captain Brand submitted a packet that included a three-page memorandum and 122 documents that included character statements, certificates, awards, and performance evaluations. Id. at 421-91. In his memorandum, Captain Brand indicated that he had "thoroughly reviewed the facts and circumstances behind the proposed charges," discussed "every aspect of the case and the ramifications of each of its potential outcomes," and determined that "a Chapter 4 discharge (whatever service characterization ultimately attaches) [would] fairly serve the interests of both the government" and plaintiff. Id. at

---

[9] Plaintiff submitted the request to the commander of the 319 Security Forces Squadron, the commander of the 319 Air Refueling Wing, and the commander of the Fifteenth Air Force for their consideration, in turn. AR 165.

421. Captain Brand then described the relevant extenuating and mitigating circumstances in plaintiff's case, explained how a Chapter 4 discharge was a "reasonable alternative to a court-martial conviction," and how such a discharge was in the best interests of the Air Force and the alleged victims.  Id. at 421-23.

The Staff Judge Advocate of the 319 Air Refueling Wing reviewed plaintiff's Chapter 4 discharge request and, on December 15, 2000, recommended to the commander of the 319 Air Refueling Wing that the request be approved.  Id. at 494-96.  In support of his recommendation, the Staff Judge Advocate stressed, among other things, the possibility that the results of a court-martial might be less favorable to the Air Force than a Chapter 4 discharge:

> Although the prosecution is fully prepared to take this case to trial, conviction is not guaranteed.  . . .  This is a typical "he said she said" factual situation and the case will be determined by who the members or military judge find more believable, the accused or the alleged victims.  . . .  If convicted, we expect [plaintiff] would receive minimal jail time, a loss of stripes, and possibly a forfeiture.  A punitive discharge is questionable.  Although his alleged misconduct warrants a bad conduct discharge, members or a military judge may be hesitant to impose a bad conduct discharge on an accused who has almost 19 years of military service with an exceptional military record.

Id. at 495.  The commander concurred with the Staff Judge Advocate's recommendation to approve plaintiff's request.  Id. at 497.  Thus, plaintiff's request was forwarded to the Fifteenth Air Force for consideration on December 18, 2000.  Id.  The Staff Judge Advocate of the Fifteenth Air Force reviewed plaintiff's request and, on December 19, 2000, recommended to the commander of the Fifteenth Air Force that the request be approved.  Id. at 497-98.

Although he had submitted plaintiff's Chapter 4 discharge request to plaintiff's command, Captain Brand continued to prepare the case for trial.  On December 20, 2000, Captain Brand requested that the government produce thirteen witnesses to testify on behalf of the defense.  Id. at 172; see also id. at 173-74 (containing annotated lists of potential witnesses).

On December 21, 2000, Captain Brand received a telephone call from the Deputy Staff Judge Advocate of the Fifteenth Air Force, who asked whether Captain Brand was sure that plaintiff wanted to proceed with his Chapter 4 discharge request.  Id. at 175.  As noted in a December 22, 2000 memorandum for the record, Captain Brand responded in the affirmative.  Id. He based his response on his "innumerable" prior discussions with plaintiff regarding the choice between a Chapter 4 discharge and a court-martial, his consultation with an attorney from his circuit office who recommended a Chapter 4 discharge, and plaintiff's consultation with a civilian attorney who recommended a Chapter 4 discharge.  Id.  But see id. at 216 (containing plaintiff's wife's November 22, 2002 testimony that civilian counsel stated that the government's case was weak), 216-17 (containing plaintiff's November 22, 2002 testimony that Captain Brand refused to seek help from circuit counsel because it would "make matters worse" with respect to

his dealings with the legal office), 231 (containing plaintiff's wife's November 22, 2002 testimony that Captain Brand did not want to bring in his circuit attorneys because then the government would do the same and the government's circuit attorneys were "far better").

Captain Brand then, that same night, called plaintiff at his mother's home in Louisiana to ensure that plaintiff still wanted to pursue the Chapter 4 discharge.  Id. at 175; see also id. at 176 (containing Captain Brand's telephone records).  But see id. at 191 (containing plaintiff's representation, taken from his June 26, 2001 electronic mail message, that Captain Brand only called him twice–once to inform him that the commander of the 319 Air Refueling Wing had approved the Chapter 4 discharge request and again to inform him that the commander of the Fifteenth Air Force approved the request).  Plaintiff expressed concern that he might have to register as a sex offender if convicted, and Captain Brand informed him that "he was facing at least two sex offenses, maybe more."  Id. at 175.  Plaintiff confirmed his desire to continue pursuing the Chapter 4 discharge and, the next day, Captain Brand called the Deputy Staff Judge Advocate to reaffirm plaintiff's position.  Id.

Plaintiff's Chapter 4 discharge request was ultimately approved and on January 5, 2001, he was discharged under other than honorable conditions.  Id. at 197, 346; see also id. at 275 (containing plaintiff's statement, in a document prepared in February 2007, that Captain Brand "informed [him] via telephone [that his] Chapter 4 was approved" by the commander of the Fifteenth Air Force).  That same day, according to plaintiff, he contacted his present counsel to make a complaint about Captain Brand.[10]  Id. at 275 (containing a statement prepared by plaintiff in February 2007).

## B.  Plaintiff's Initial Allegations of Ineffective Assistance of Counsel Against Captain Brand

On February 15, 2001, newly retained counsel sent a memorandum to General Charles T. Robertson, the commander of the Air Mobility Command, requesting that General Robertson initiate an investigation into the conduct of Captain Brand and consider supporting the position that plaintiff should be reinstated to active duty to face the special court-martial.  Id. at 347-52. In the memorandum, counsel averred that the evidence supporting the allegations against plaintiff was weak; that plaintiff was an "outstanding service member" with over eighteen years of active duty service; that plaintiff had intended to "go into police work" after retiring from the Air Force; and that plaintiff, "upon the direction and advice of Capt. Brand and contrary to [plaintiff]'s desires, submitted a Chapter 4 in lieu of court-martial."  Id. at 347-48.  Counsel alleged that Captain Brand: (1) "[f]ailed to thoroughly investigate the case"; (2) "[w]as adamant that a

_____

[10]  The record lacks a clear explanation for why plaintiff contacted counsel in January 2001 to complain about Captain Brand (and ultimately retained counsel for this purpose) but declined to retain civilian counsel to replace Captain Brand in December 2000.  However, there is some suggestion in testimony from November 2002 that plaintiff contacted counsel in January 2001 because he had been unable to find employment in law enforcement.  See AR 216-18.

Chapter 4 was the only appropriate tactical choice"; and (3) "[p]rovided incorrect advice regarding post service impact of the other-than-honorable discharge in the law enforcement arena."  Id. at 348.

In support of his allegations, plaintiff's counsel asserted that on November 21, 2000, the date that plaintiff was formally charged, Captain Brand, "without any investigation," asked plaintiff whether he would accept a Chapter 4 discharge and indicated that a "Chapter 4 offer was on the table."  Id. at 349.  Then, contended counsel, on November 27, 2000, Captain Brand "again inquired about the Chapter 4" without any investigation, disclosing to plaintiff "that base legal was pushing the Chapter 4 decision."  Id.  Counsel then averred that Captain Brand informed plaintiff during a two-and-one-half hour meeting on December 7, 2000, that "he had interviewed all the complaining witnesses and found only one . . . to be credible," that he believed plaintiff "would be found guilty of 'something,'" and that he "strongly advised that a Chapter 4 would be accepted."  Id.  According to his counsel, plaintiff informed Captain Brand that "he wanted to defend himself," but was advised by Captain Brand that "he could recover from an other-than-honorable discharge and have a career in law enforcement" and to "put his pride aside and accept the Chapter 4."  Id.  Counsel claimed that plaintiff told Captain Brand that "he wanted to fight the case" on "several occasions after" December 7, 2000, but that Captain Brand "talked [him] out of it . . . ."  Id.  Finally, counsel maintained that "Capt. Brand's sole investigation of the case was to interview the complaining witnesses" and that plaintiff "advised Capt. Brand that dates of the alleged incidents were wrong, [that] alibis existed . . . [, and] that one alleged victim's drawing of his home was wrong."  Id. at 350.  In sum, counsel asserted that given the weakness of the evidence supporting the charges, the strength of the "good soldier" evidence, the uncertainty as to whether plaintiff would have received a bad conduct discharge if convicted, and the impossibility of plaintiff obtaining employment with law enforcement with a discharge under other than honorable conditions, Captain Brand should have acceded to plaintiff's wishes and allowed plaintiff's case to proceed to court-martial.[11]  Id. at 350-51.

General Robertson forwarded plaintiff's counsel's memorandum to the Staff Judge Advocate of the Air Mobility Command, who wrote back to counsel on March 9, 2001, indicating that General Robertson believed that plaintiff "was treated fairly throughout the disciplinary process."  Id. at 357.  He further noted that he had forwarded counsel's memorandum to the commander of the Air Force Legal Services Agency, where Captain Brand was assigned, for review.  Id.

On April 10, 2001, the commander of the Air Force Legal Services Agency appointed Captain Anthony A. Swan as an inquiry officer to investigate whether Captain Brand "violated Air Force Rules of Professional Conduct and/or the Air Force Standards of Military Justice in the

---

[11]  Counsel further claimed that Captain Brand "should have obtained a signed document from [plaintiff] which would have said that proceeding to court-martial was against [his] advice, but was what [plaintiff] instructed him to do."  AR 351.

course of his representation" of plaintiff.  Id. at 16.  Specifically, the commander directed Captain Swan to:

> collect and analyze the evidence relevant to three major allegations: whether Captain Brand adequately investigated his client's case; whether Captain Brand properly advised his client about requesting discharge in lieu of trial; and whether any advice Captain Brand provided his client about the impact of an under other than honorable conditions discharge was incorrect.

Id.  The commander also instructed Captain Swan to "investigate any other matters . . . relevant to the issue of whether Captain Brand's representation of [plaintiff] met the standards required by the Air Force Rules of Professional Conduct and/or the Air Force Standards of Military Justice." Id.

During his investigation of plaintiff's allegations, Captain Swan obtained and reviewed, among other things, the investigation report and supporting documents prepared by the Air Force Office of Special Investigations; the charge sheet; Captain Brand's discovery requests, witness lists, and telephone records; plaintiff's Chapter 4 discharge request; the sworn statements of Captain Brand and Staff Sergeant Johnson; and plaintiff's electronically mailed responses to his questions.  Id. at 43; see also id. at 31-36 (containing a summary of the facts derived from these documents).  The results of Captain Swan's investigation were presented in his August 14, 2001 Report of Investigation.  Id. at 31-42.

Captain Swan examined plaintiff's allegations pursuant to the two-part test set forth by the United States Supreme Court ("Supreme Court") for claims of ineffective assistance of counsel, which requires a plaintiff to show that counsel's representation was deficient and that he or she was prejudiced by the deficiency.[12]  Id. at 37-40.  Addressing first the allegation that Captain Brand did not adequately investigate plaintiff's case, Captain Swan measured Captain Brand's performance against Air Force Standard for Criminal Justice 4-4.1, which requires that "defense counsel conduct a prompt investigation of the circumstances of the case and . . . explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of a conviction."  Id. at 37.  Captain Swan, noting that Captain Brand promptly served a discovery request on the legal office, interviewed approximately twenty-eight witnesses, and presented an extensive analysis of plaintiff's case in the Chapter 4 discharge request package, found that Captain Brand "thoroughly investigated" plaintiff's case and explored the "possible outcomes . . . well prior to the Chapter 4 Request's approval."  Id. at 37-38.  Thus, Captain Swan concluded that Captain Brand's performance was not deficient.  Id. at 38.  Because he found no deficiency, Captain Swan did not conduct a prejudice analysis.  Id.

---

[12]  Although Captain Swan did not refer to the case by name, it is clear that he was applying the test set forth in Strickland v. Washington, 466 U.S. 668 (1984).

Next, discussing the allegation that Captain Brand did not properly advise plaintiff about requesting a Chapter 4 discharge in lieu of court-martial, Captain Swan measured Captain Brand's performance against Air Force Standard for Criminal Justice 4-6.1, which indicates that "whenever the nature and circumstances of the case permit, the defense counsel should explore the possibility of an early diversion of the case from the criminal process," that defense counsel should not discuss such a diversion with opposing counsel prior to obtaining consent from his client, and that "[u]nder no circumstances should a defense counsel recommend that an accused accept a plea agreement unless a full investigation and study of the case has been completed . . . ." Id.  Captain Swan initially found that although Captain Brand should have obtained plaintiff's permission to "initially ascertain if a Chapter 4 discharge was an option," Captain Brand "did so before entering negotiations with the legal office." Id.  Captain Swan then noted that Captain Brand "adequately investigated" plaintiff's case, that Captain Brand discussed with plaintiff "the various options available," that "the government had a strong case against" plaintiff, that plaintiff's main concern was the possibility that he would have to register as a sex offender, and that plaintiff had consulted with a civilian counsel who had advised plaintiff to pursue the Chapter 4 discharge. Id. at 38-39.  Thus, Captain Swan concluded that Captain Brand's advice to pursue a Chapter 4 discharge was not deficient. Id. at 39.  Because he found no deficiency, Captain Swan did not conduct a prejudice analysis. Id.

Finally, addressing the allegation that Captain Brand provided plaintiff with inaccurate advice concerning the effect of an under other than honorable conditions discharge, Captain Swan measured Captain Brand's performance against Air Force Standard for Criminal Justice 4-5.1, which requires defense counsel, "after informing himself . . . fully on the facts and the law," to "advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome." Id.  Captain Swan noted that Captain Brand properly advised plaintiff that a Chapter 4 discharge in lieu of court-martial would be characterized as a discharge under other than honorable conditions, that plaintiff read Chapter 4 of Air Force Instruction 36-3208, that Captain Brand responded to plaintiff's inquiry about the possibility of future law enforcement employment by providing plaintiff with information from the New York City Police Department but making no assurances of actual employment, that plaintiff's main concern was the effect of registering as a sex offender, and that Captain Brand advised plaintiff that he could withdraw his Chapter 4 discharge request. Id. at 40.  Based upon these findings, Captain Swan concluded that "Captain Brand did not give incorrect or deficient advice regarding the effect of a[n under other than honorable conditions] discharge." Id.  And again, because he found no deficiency, Captain Swan did not conduct a prejudice analysis. Id.

In sum, Captain Swan found that none of plaintiff's three allegations were substantiated. Id. at 37-41.  The Deputy Chief of the Trial Defense Division of the Air Force Legal Services Agency, Lieutenant Colonel Lauren N. Johnson-Naumann, performed a legal review of Captain Swan's report. Id. at 26-29.  In a September 27, 2001 memorandum, Lieutenant Colonel Johnson-Naumann concluded that Captain Swan's findings were "supported by a preponderance of the evidence" and that there were "no legal, substantive or procedural errors warranting corrective action." Id. at 26, 29.  She further concluded that Captain Swan's report was "legally

-12-

sufficient" and would "support a recommendation to [the Judge Advocate General] that the case be closed." Id. at 29. The Chief of the Trial Defense Division concurred with these conclusions. Id.

Subsequently, Captain Swan's report and the Trial Defense Division's legal review were forwarded to the commander of the Air Force Legal Services Agency. Id. at 12. In an October 15, 2001 memorandum, the commander, after "thoroughly review[ing] the complaint, report of investigation, and related materials pertaining to an allegation of ineffective assistance of counsel in the representation of [plaintiff] made against Captain Steven T. Brand," as well as the legal review, found that "the evidence [did] not support the allegations against Captain Brand and that no violation of either the Air Force Rules of Professional Conduct or the Air Force Standards of Criminal Justice occurred." Id. The commander recommended that "the case be closed without further investigation . . . ." Id. In a February 7, 2002 memorandum, the Judge Advocate General of the Air Force indicated that he reviewed the "ethics complaint" against Captain Brand, Captain Swan's report, and the commander's recommendation, and concluded that "there was no violation of either the Air Force Rules of Professional Conduct or the Air Force Standards of Criminal Justice." Id. at 11. He directed that the case be closed with no further action. Id.

### C. Proceedings Before the Air Force Discharge Review Board

It appears that although plaintiff did not receive a copy of Captain Swan's report, he did become aware of the disposition of his complaint against Captain Brand for ineffective assistance of counsel. See id. at 229 (containing counsel's November 22, 2002 statement that "[t]here is a report by Tony Swan, which is obviously not available to me or anybody"). Thus, several months later, on June 22, 2002, plaintiff, through counsel, submitted an Application for the Review of Discharge or Dismissal From the Armed Forces of the United States to the Air Force. Id. at 197-98, 346. In his application, plaintiff requested the following relief: (1) a change in the characterization of his discharge from "under other than honorable conditions" to "honorable" and (2) a change in the reason and authority for his discharge from "in lieu of court-martial" to "secretarial authority." Id. at 198, 346. Plaintiff also indicated his desire to appear in person at a hearing. Id. at 346.

Upon reviewing plaintiff's application, the Air Force Discharge Review Board ("AFDRB") identified three issues for consideration: (1) "[w]hether the actions of the area defense counsel were incompetent and ineffective in counseling Applicant to seek a discharge in lieu of court-martial"; (2) "[w]hether the facts of this case demonstrated any wrongdoing on the part of Applicant"; and (3) "[w]hether an other-than honorable discharge was a proper characterization of Applicant's service." Id. at 198. In addition to considering the allegations presented in counsel's February 15, 2001 memorandum, the report and supporting documents prepared by the Air Force Office of Special Investigations, the charge sheet, plaintiff's Chapter 4 discharge request and the approvals of that request, and several character letters, id. at 198, 494-

-13-

525, the AFDRB heard the live testimony of plaintiff and his wife at a November 22, 2002 hearing at Dobbins Air Reserve Base in Marietta, Georgia,[13] id. at 195-96, 200-51.

Counsel prefaced the testimony of plaintiff and his wife with an opening statement, during which he characterized Captain Brand's representation of plaintiff "one of the most incompetent representations that [he had] ever observed,"[14] id. at 200, and declared that the only way in which plaintiff could obtain relief for Captain Brand's alleged incompetence was to apply first to the AFDRB and then to the AFBCMR, id. at 201.  After counsel's opening statement, the AFDRB heard the direct testimony of plaintiff's wife.[15]  She testified that Captain Brand began talking to plaintiff about the possibility of a Chapter 4 discharge prior to reading the statements of or talking to the alleged victims.  Id. at 203; see also id. at 208 (containing plaintiff's wife's statement that Captain Brand never talked about how he would defend the case at trial or what the strengths or weaknesses of the case were while she was present), 214-15 (containing plaintiff's testimony confirming his wife's recitation).  It was her belief that her husband was innocent of all charges, and she "pushed Capt[ain] Brand to build a defense and go to a court-martial."  Id. at 204; see also id. at 204-10 (containing plaintiff's wife's testimony that neither the allegations nor the alleged victims were credible, during which, among other things, she indicated that the description and drawing of her house by one of the alleged victims was

_____

[13]  Neither plaintiff nor his wife were subject to cross-examination by a representative of the Air Force and no other witnesses testified.  See AR 200-51.

[14]  In addition to this comment, plaintiff's counsel's oral statements and correspondence in the record are replete with disparaging comments concerning Captain Brand's representation of plaintiff and other Air Force personnel in general.  See, e.g., AR 201 (containing counsel's November 22, 2002 statement concerning "how egregious the conduct of this counsel was"), 258 (containing counsel's June 19, 2006 memorandum asserting that the conclusion of the chief of the Military Justice Division of the Air Force Legal Operations Agency that an evidentiary hearing was unnecessary was "the height of arrogance"), 540 (containing counsel's March 11, 2004 memorandum alleging that the Staff Judge Advocate of the Headquarters of the Air Force Personnel Center was inherently biased).  Such inflated, intemperate commentary does nothing to serve plaintiff's interests and the court accords it no weight.  See Enzo Biochem, Inc. v. Gen-Probe, Inc., 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence."); Mel Williamson, Inc. v. United States, 229 Ct. Cl. 846, 848 (1982) ("Argument is not fact."); Del., Lackawanna & W. R.R. Co. v. United States, 54 Ct. Cl. 35, 41-42 (1919) ("The court can not accept asseverations of counsel, as to facts, made in argument, whether denied or conceded by the other side at the bar, without any stipulation duly filed or other evidence . . . .").  In short, counsel's hysteria and scornful commentary are no substitute for legal argument.

[15]  The court describes only selected portions of the testimony before the AFDRB, focusing on the testimony that supplements or conflicts with plaintiff's prior statements and allegations, the sworn statements of Captain Brand and Staff Sergeant Johnson, and the contemporaneous evidence.

-14-

completely inaccurate).  She stated that she inquired of Captain Brand about the possibility of proceeding pursuant to Article 15, and that although he agreed that such punishment would be appropriate in plaintiff's case, he did not want to raise the possibility with the legal office for fear that the office would take the possibility of a Chapter 4 discharge off of the table.  Id. at 203.  She also testified that plaintiff signed the Chapter 4 discharge request without her knowledge, and that when she reviewed the submitted request, she disapproved of the manner in which Captain Brand referred to her.  Id. at 204.

Next to testify was plaintiff.  At the outset of his testimony, he hypothesized that the four alleged victims, all of whom knew each other, wanted to get rid of him because he was "a very strict disciplinarian" and "wouldn't put up with anything."  Id. at 210; see also id. at 211-14 (containing plaintiff's explanation of how he disciplined the alleged victims and why their allegations were otherwise not credible).  Plaintiff also indicated that he was unable to find a law enforcement job in the public sector upon his discharge, as he had hoped to do.  Id. at 218; see also id. (containing interjecting testimony from plaintiff's wife indicating that plaintiff was ultimately hired by a private security firm).  Instead, plaintiff stated, he was, at the time of the hearing, employed by Best Buy as a loss prevention supervisor.  Id. at 218-19.  Plaintiff concluded his direct testimony by confirming that his ultimate goal was to be reinstated to the Air Force so that he could defend himself at court-martial.  Id. at 219; accord id. at 244, 249.

At the conclusion of the direct testimony, the members of the AFDRB orally examined plaintiff and his wife.  Id. at 219-51.  The members pressed plaintiff as to why he proceeded with the Chapter 4 discharge request in light of his stated desire to defend himself at trial and his wife's expressed opposition to the request, sought more information concerning the validity of the allegations against plaintiff and the characters and motivations of the alleged victims, questioned the extent to which plaintiff believed that Captain Brand properly pursued plaintiff's defense and gave good advice, asked plaintiff's wife about the advice she was receiving from her command,[16] probed plaintiff and his wife about the consequences of putting on a good soldier defense, and requested additional information about what was known by plaintiff's command. Id.

After hearing from plaintiff, plaintiff's wife, and counsel, the AFDRB issued its decision that same day, explicitly finding "that the evidence of record substantiates an inequity that would justify upgrade of the discharge."  Id. at 195-96.  By a vote of four to one, the AFDRB changed the characterization of plaintiff's discharge to "honorable" and the reason and authority for the discharge to "secretarial authority."  Id.  The AFDRB also voted to change plaintiff's reenlistment code.  Id.  In the rationale for its decision, the AFDRB wrote:

> The Board noted the possible incorrect advice given the applicant by his defense
> counsel and the applicant's 18 years of outstanding service.  Also, the Board noted

---

[16] Plaintiff's wife was, at the time of her testimony, a Master Sergeant in the Air Force. AR 204.

that there was no third party eyewitness confirming any of the alleged incidents. After a thorough and complete consideration of the information submitted by the applicant, the applicant's compelling personal testimony, and information contained in the record, the Board concluded there was sufficient mitigation and extenuation to substantiate upgrade of the discharge and to change the reason for the discharge.  The Board also agreed to change the applicant's reenlistment code.

Id. at 196.  The AFDRB concluded "that the discharge was consistent with the procedural and substantive requirements of the discharge regulation and was within the discretion of the discharge authority."  Id.  Despite this fact, the AFDRB determined "that the overall quality of [the] applicant's service is more accurately reflected by an Honorable discharge."  Id.; see also id. at 529 (containing plaintiff's amended form DD-214, Certificate of Release or Discharge From Active Duty).

### D.  Proceedings Before the Air Force Board for Correction of Military Records

Although the AFDRB granted plaintiff all of the relief he requested, he was still barred from reenlisting with the Air Force due to the number of years he had already served.  Id. at 354. Thus, plaintiff attempted to seek additional relief from the only entity empowered to grant his request–the AFBCMR.  Id.  On March 30, 2003, plaintiff, through counsel, submitted an Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code, Section 1552, seeking the following relief: (1) reinstatement to the Air Force as of either the date of separation or a date otherwise determined by the AFBCMR; (2) reinstatement to the Air Force at the rank of Technical Sergeant; (3) receipt of back pay and allowances; (4) credit for time in grade for pay, promotion, and retirement purposes; and (5) the expungement of the separation from his records.  Id. at 345, 355.  Plaintiff contended that he was able to fully present his case to the AFDRB, that the AFDRB "fully explored" the "role of military defense counsel," and that the AFDRB "found that the military defense counsel had failed" plaintiff because plaintiff's "desires to go to court-martial were ignored."[17]  Id. at 355.  Accordingly, plaintiff argued that he had sufficiently established the basis for the AFBCMR to allow him to reenlist.  Id. at 356.  Plaintiff requested an in-person hearing with the AFBCMR.  Id. at 345.

Upon its receipt of plaintiff's application, the AFBCMR sought three advisory opinions from the Air Force Personnel Center.  See id. at 341-42, 531-38.  One of the opinions, dated June 11, 2003, was from the Staff Judge Advocate, Colonel Margaret R. McCord.  Id. at 531-35.  In

---

[17]  These contentions by plaintiff, as framed by counsel, completely misrepresent the findings and conclusions of the AFDRB.  Compare AR 196 (containing the decision of the AFDRB), with id. at 355 (containing counsel's interpretation of the AFDRB's decision). Counsel should take greater care when making factual representations to the court.  Attorneys practicing in the United States Court of Federal Claims ("Court of Federal Claims") are subject to sanctions pursuant to Rule 11 of the Rules of the United States Court of Federal Claims ("RCFC").

her opinion, Colonel McCord discussed three issues: (1) "Did Captain Brand fail to adequately investigate the charges against the applicant?"; (2) "Was the applicant's Chapter 4 request submitted over his objection?"; and (3) "Would the applicant have fared better at trial?" Id. at 532-35.  In addressing those issues, Colonel McCord referenced both a conversation with Mr. Brand, who had left the Air Force and was in private practice, and the case file, which included information about the criminal charges faced by plaintiff, plaintiff's Chapter 4 discharge request and supporting documents, counsel's February 15, 2001 memorandum, plaintiff's application to the AFDRB, and the AFDRB's decision. Id. at 531-35.

With respect to the first issue, Colonel McCord noted that the same question was the subject of plaintiff's February 15, 2001 "complaint against [Captain] Brand alleging ineffective assistance of counsel" and indicated that "the Office of The Judge Advocate General had conducted a full investigation of the complaint, and that, on 7 February 2002, The Judge Advocate General determined that [plaintiff's] complaint of ineffective assistance was unsubstantiated." Id. at 532; cf. id. (indicating that Mr. Brand had characterized the complaint as an "ethics complaint").  She then noted that "the Air Force [was] entitled to rely on the presumption of regularity that the government official in question discharged his duties in good faith and in accordance with the law." Id.  Finding that plaintiff's contention that Captain Brand did not adequately "investigate or evaluate evidence of alibis or of errors or inconsistencies in the complainants' statements [was] not supported by any evidence in the case file and [was] nothing more than speculation," Colonel McCord concluded that plaintiff had "not demonstrated by a preponderance of the evidence that his attorney failed to adequately investigate the charges against [him]." Id.

With respect to the second issue, Colonel McCord, noting that the contemporaneous evidence did not support a finding that Captain Brand coerced plaintiff into signing the Chapter 4 discharge request, concluded that plaintiff had "not demonstrated by a preponderance of the evidence that [Captain] Brand pursued the Chapter 4 discharge over [plaintiff]'s objection." Id. at 533.  Finally, with respect to the third issue, Colonel McCord first noted how plaintiff mischaracterized the decision of the AFDRB and described the extent to which the AFDRB lacked an adequate record. Id. at 534.  Colonel McCord then stated that plaintiff did not claim innocence in his application to the AFBCMR and that even though some weaknesses were identified in the government's case, such weakness were common and were often overcome by government counsel. Id.  Characterizing plaintiff's allegations (in particular, counsel's observations in his February 15, 2001 memorandum) as "amount[ing] to no more than retrospective disagreement as to the defense strategy that should have been employed in [plaintiff]'s case" and asserting that the allegations did "not demonstrate that [Captain] Brand's evaluation of the merits of the case or his decision to recommend a Chapter 4 discharge were incorrect," Colonel McCord concluded that plaintiff had "not demonstrated by a preponderance of the evidence that [Captain] Brand's advice to pursue a Chapter 4 discharge instead of litigating the charges constituted an error or injustice." Id. at 535.

Colonel McCord then addressed plaintiff's desire to be reinstated to active duty so that he could "be brought before a special court-martial on the charges." <u>Id.</u> She opined that "[l]itigating the charges now–as opposed to litigating them in a timely manner as would have been done absent the Chapter 4 request–would present substantial difficulties for the prosecution and likely would put [plaintiff] in a better position than he otherwise would have occupied." <u>Id.</u> In sum, argued Colonel McCord, plaintiff:

> should not be allowed to use his discharge request to halt the court-martial process established by law as the proper means to adjudicate the criminal allegations against him and now, under the guise of an allegation of error or injustice, litigate those allegations contrary to the Chapter 4 request accepted in good faith by the Air Force. The fact that [plaintiff] may now regret his decision does not constitute an error or injustice that would justify allowing him to revisit that decision two and [one] half years after the request was tendered.

<u>Id.</u> Thus, Colonel McCord recommended that the AFBCMR deny plaintiff's application. <u>Id.</u>

The second of the advisory opinions was prepared by Nancy Baker of the Retirements and Separations Division on May 6, 2003, and addressed the discharge process. <u>Id.</u> at 536. Ms. Baker, mirroring the conclusion of the AFDRB, indicated that "the discharge was consistent with the procedural and substantive requirements of the discharge regulation" and that "the discharge was within the discretion of the discharge authority." <u>Id.</u> Ultimately, Ms. Baker concluded that plaintiff's "discharge was valid." <u>Id.</u> In the final advisory opinion, dated May 13, 2003, Gwen E. Cobb of the Enlisted Promotion and Military Testing Branch concurred with Ms. Baker's conclusion that "the discharge was valid" and added that if the AFBCMR reinstated plaintiff to active duty, plaintiff's "initial grade would be [Technical Sergeant] with a [date of reenlistment] of 1 Dec 1997." <u>Id.</u> at 537-38.

On July 31, 2003, plaintiff, through counsel, requested that the AFBCMR temporarily withhold consideration of his application. <u>Id.</u> at 342. About seven months later, via counsel's March 11, 2004 memorandum, plaintiff requested that the AFBCMR "release the hold" on the case. <u>Id.</u> at 540. In the memorandum, counsel also urged the AFBCMR to listen to the recorded proceedings before the AFDRB and provided a rebuttal to Colonel McCord's advisory opinion. <u>Id.</u> at 540-42. In his rebuttal, counsel first suggested that Colonel McCord and her office were biased, claiming that when faced with allegations that an Air Force attorney provided ineffective assistance, "[i]t is not particularly surprising that the [Staff Judge Advocate of Headquarters, Air Force Personnel Center] would vehemently oppose such a motion, no matter how manifest that motion is." <u>Id.</u> at 540. Counsel then, noting Colonel McCord's conversation with Mr. Brand, reiterated plaintiff's request for an in-person hearing where Mr. Brand could testify. <u>Id.</u> at 540-42. In addition, counsel contended that a mere conversation with Mr. Brand was insufficient to support Colonel McCord's advisory opinion and that she should have obtained an affidavit from Mr. Brand. <u>Id.</u> at 541. Next, counsel disputed Colonel McCord's assertion that the record lacked evidence of ineffective assistance, claiming that the sworn testimony of plaintiff and his wife

before the AFDRB constituted such evidence.  Id.  Counsel further contended that Colonel McCord was incorrect in her assertion that Captain Brand had been "exonerated of ineffective assistance by the Judge Advocate General" because "the Judge Advocate General converted [plaintiff's] ineffective assistance of counsel complaint into an ethics complaint and then found that [Captain] Brand did nothing unethical."[18]  Id.

The AFBCMR considered plaintiff's application on May 11, 2004, opting not to convene a hearing.  Id. at 344.  In a June 29, 2004 decision, after considering plaintiff's submissions and the aforementioned advisory opinions, the AFBCMR denied plaintiff's application.  Id. at 340-44.  The AFBCMR concluded that "[i]nsufficient evidence ha[d] been presented to demonstrate the existence of an error or an injustice."  Id. at 343; accord id. at 344 ("[W]e conclude that no basis exists to recommend granting the relief sought in this application.").  In reaching this conclusion, the AFBCMR noted that the findings of the AFDRB upon which plaintiff relied "were based not on error, but rather on possible injustice" and that, "based on the totality of the evidence provided, the corrections to the record approved by the AFDRB were proper and fitting, and further relief would not be appropriate."  Id. at 343.  Then, with reference to the criminal charges faced by plaintiff, the AFBCMR expressed its reluctance to "reverse the decisions of commanding officers, who are closer to events, in the absence of error or abuse of discretionary authority" and who, in this case, "determined that the evidence against [plaintiff] was credible." Id.  The AFBCMR emphasized that plaintiff "was a mature senior noncommissioned officer" and that "[o]ther than his own assertions, he [had] provided no persuasive evidence showing he was miscounseled, that his decision to request separation in lieu of trial was coerced in any way, or that his commanders abused their discretionary authority when they accepted his offer and

_____

[18]  The basis for counsel's assertion that the Air Force had converted his February 15, 2001 memorandum alleging ineffective assistance of counsel into an ethics complaint is unclear. The evidence in the record suggests that counsel became aware of the purported conversion before he received Colonel McCord's advisory opinion.  Specifically, during plaintiff's testimony before the AFDRB on November 22, 2002, counsel noted that Captain Swan investigated plaintiff's ineffective assistance of counsel allegations, and that "[m]uch to his regret and mine, it got turned into an ethics complaint," even though "it never was meant to be an ethics complaint." AR 229.  Counsel indicated, however, that he had not seen Captain Swan's report.  Id. Moreover, as of the date counsel prepared this memorandum (i.e., March 11, 2004), he had not received a copy of the "[Air Force Legal Services Agency] investigation."  See id. at 257 (indicating that as of June 19, 2006, neither plaintiff nor counsel had seen the "[Air Force Legal Services Agency] investigation"); see also id. at 259 (indicating that the AFBCMR forwarded to plaintiff a copy of Captain Swan's report on December 13, 2006), 273 (indicating, in a February 14, 2007 memorandum, plaintiff's receipt of Captain Swan's report).  Thus, the only basis for counsel's contention appears to be his implication that he heard about the purported treatment of plaintiff's complaint directly from Captain Swan.  See id. at 229 (noting Captain Swan's regret that plaintiff's allegations of ineffective assistance of counsel were converted into an ethics complaint).  However, the record contains no further evidence of communications between counsel and Captain Swan.

approved his discharge." Id. at 343-44.  As a final note, the AFBCMR found that a hearing would not "materially add to [its] understanding of the issues involved" because plaintiff's case was "adequately documented . . . ." Id. at 344.

### E.  Plaintiff's Complaint in the United States Court of Federal Claims

Plaintiff was dissatisfied with the AFBCMR's denial of his claim and thus, on March 29, 2005, filed a complaint in the Court of Federal Claims.  Plaintiff asserts one cause of action in his complaint, claiming that the AFBCMR's "fail[ure] to grant Plaintiff relief by concluding that Capt[.] Brand did not engage in ineffective assistance of counsel without an evidentiary hearing" was "contrary to law, arbitrary and capricious[,] and unsupported by substantial evidence." Compl. ¶ 21.  Plaintiff proposes two alternative forms of relief in his complaint, one premised upon his reinstatement to the Air Force and one premised upon his being treated as if he retired at the end of his last reenlistment with twenty years of active duty service. Id. ¶¶ (a)-(h).  Under the first alternative, plaintiff seeks (1) reinstatement to the Air Force as a Technical Sergeant as of the date of his separation; (2) receipt of back pay and allowances from the date of his separation to the present; (3) credit for time in grade for pay, promotion, and retirement purposes; and (4) the expungement of his form DD-214 and any references in his service records to the separation in lieu of court-martial. Id. ¶¶ (a)-(c).  Under the second alternative, plaintiff seeks (1) back pay and allowances that he would have received as a Technical Sergeant from the date of his separation to the date upon which he would have achieved twenty years of active duty service; (2) back retirement pay that he would have received as a Technical Sergeant from the date upon which he would have achieved twenty years of active duty service to the present; (3) retirement pay for the remainder of his life; (4) the expungement of any references in his service records to the separation in lieu of court-martial; and (5) the amendment of his service records to reflect the constructive service. Id. ¶¶ (d)-(h).  In addition, plaintiff seeks attorneys fees, costs, and "other further relief as may in the circumstances be just and proper." Id. ¶¶ (i)-(j).

Subsequent to plaintiff filing his complaint in this court, defendant sought to remand the case to the AFBCMR so that the AFBCMR could consider Captain Swan's report and related documents. See AR 7-8.  Plaintiff supported remand, but wanted the court to direct the AFBCMR to conduct an evidentiary hearing. Id. at 8.  Ultimately, in a November 1, 2005 Opinion and Order, the court expressed its reluctance "to specify the precise procedures that must be undertaken on remand, as such a decision is more appropriately within the province of the AFBCMR," and ruled:

> In general, the case is remanded to the AFBCMR with instructions to review the
> Air Force records of its investigation of Plaintiff's claim of ineffective assistance
> of counsel.  Although holding an evidentiary hearing may be advisable, the court[]
> does not, at this time, believe it is warranted for it to order the AFBCMR to hold
> such a hearing.  However, if the AFBCMR does not conduct an evidentiary
> hearing, it shall provide an explanation as to why it did not do so.  In addition, the
> AFBCMR is directed to consider the [AFDRB]'s alleged findings that "an error

and injustice" had occurred with regard to Plaintiff or to provide an explanation as to why it did not consider these findings.

Id. at 10.

### F.  Remand to the Air Force Board for Correction of Military Records

On remand, the AFBCMR requested an additional advisory opinion from the chief of the Military Justice Division of the Air Force Legal Operations Agency.  See id. at 252-55.  In his May 11, 2006 memorandum, Colonel William A. Druschel concluded that the Air Force Legal Services Agency's "investigation of [plaintiff]'s claim of ineffective assistance of military counsel [was] exhaustive, complete, and the preponderance of the evidence support[ed] the conclusion that the claim [was] without merit."  Id. at 255.  Colonel Druschel evaluated the investigation in light of the two-part test for determining ineffective assistance of counsel set forth by the Supreme Court in Strickland v. Washington, and found that evidence that Captain Brand provided ineffective assistance was lacking, as plaintiff was well-informed of the consequences of both proceeding to court-martial and seeking a Chapter 4 discharge.  Id. at 254-55; see also id. at 255 (finding "no irregularities" in plaintiff's Chapter 4 discharge request).  Colonel Druschel further commented that "[b]ased upon the review of the [Air Force Legal Services Agency] investigation . . . , a[n AFBCMR] sponsored evidentiary hearing into the matter is unwarranted and would not, in all probability, produce any new or additional evidence demonstrating the existence of any error or present facts or circumstances supporting an injustice meriting corrective action."  Id. at 255.

The AFBCMR forwarded Colonel Druschel's advisory opinion to plaintiff on May 23, 2006.  Id. at 256.  In a June 19, 2006 memorandum, plaintiff's counsel advised the AFBCMR that neither he nor plaintiff had seen the Air Force Legal Services Agency investigation.  Id. at 257; see also id. (claiming that counsel and plaintiff "would like to see that investigation, but because it is an 'ethics investigation[,]' it was not made available to" them).  Yet, despite not having seen the investigation, counsel claimed that "the investigation examined whether Capt[.] Brand violated any ethical standards," id. at 257, that the "'investigation' appear[ed] to be in direct conflict with the [AFDRB] proceedings," id. at 258, and that because the Air Force Legal Services Agency conducted an ethics investigation and not an investigation concerning ineffective assistance of counsel, the investigation was not relevant, id. at 257.  Finally, counsel attacked Colonel Druschel's conclusion that an evidentiary hearing was not warranted in plaintiff's case as "the height of arrogance" and requested that a hearing be conducted.  Id. at 258.

On December 13, 2006, after receiving permission from the Air Force Legal Services Agency, the AFBCMR forwarded a copy of Captain Swan's August 14, 2001 report to counsel.

Id. at 259.  In a February 14, 2007 memorandum,[19] counsel acknowledged receipt of the report and indicated that he had attached to his memorandum plaintiff's response to the report and a declaration from a supportive witness.[20]  Id. at 273; see also id. at 275-77 (plaintiff's response); 278 (witness's declaration).

With the benefit of the investigation of the Air Force Legal Services Agency, the proceedings before the AFDRB, the new advisory opinion, plaintiff's three additional responses, and all of the evidence that it had previously considered, the AFBCMR reconsidered plaintiff's application on July 11, 2007.  Id. at 2-6.  In an August 9, 2007 decision, the AFBCMR denied plaintiff's application due to "insufficient evidence of error or injustice . . . ."  Id. at 6; see id. at 2 (containing the date of the decision).  In reaching its decision, the AFBCMR discussed the relevance of the investigation of the Air Force Legal Services Agency: "Notwithstanding counsel's assertion that the Air Force investigation into this matter only looked at whether the Area Defense Counsel committed any ethical violations, we believe that the investigation establishe[d] by a preponderance of the evidence [that plaintiff] was not the victim of ineffective assistance of counsel."  Id. at 4.  The AFBCMR believed that plaintiff was "properly advised and put on notice of the consequences of his voluntary request for administrative separation in lieu of court-martial and that he could receive an under other than honorable conditions discharge."  Id.  The AFBCMR also emphasized that plaintiff did not change course after consulting with a civilian attorney.  Id.

Then, turning to the relevance of the proceedings before the AFDRB, the AFBCMR provided:

> After thoroughly reviewing the transcript of the AFDRB hearing, we find the relief they granted a reasonable exercise of their authority, but feel that the relief requested of this Board exceeds what would be appropriate.  We note first that the AFDRB does not use the error or injustice standard that governs the AFBCMR.  Rather[,] it uses the criteria of inequity and/or impropriety in determining whether the character of a discharge should be upgraded or whether the basis for a discharge should be changed.  Secondly, its governing instruction specifically allows an upgrade even when there is not an inequity or impropriety based upon

---

[19]  In this memorandum, counsel noted that the report referred to supporting documentation, which was not included with the forwarded report.  AR 273.  Counsel requested access to the sworn statements of Captain Brand and Staff Sergeant Johnson, as well as Captain Brand's December 22, 2000 memorandum for the record.  Id.  The AFBCMR forwarded these documents to counsel on April 17, 2007.  See id. at 279-85.  In a May 17, 2007 memorandum, counsel asserted that "[t]he affidavits from Capt[.] Brand and [Staff Sergeant] Johnson [were] self[-]serving and [were] untested by cross examination" and reasserted that a hearing was necessary to reach the truth in this case.  Id. at 286-87.

[20]  Relevant allegations from plaintiff's response were included in Part I.A above.

what can best be described as a consideration of all the surrounding facts and circumstances.  In this case, it found [plaintiff]'s discharge was consistent with the procedural and substantive requirements of the discharge regulation and was within the sound discretion of the discharge authority.  However, it appears the AFDRB had some doubt as to whether the advice given to the applicant by [Captain Brand] was possibly incorrect, doubt which this Board does not have as explained above.  When factoring in the possibility of incorrect advice from counsel, [plaintiff]'s apparent stellar career, the fact the allegations were not confirmed by a third party and testimony given, the AFDRB found there was sufficient mitigation and extenuation to upgrade [plaintiff]'s discharge to honorable, change the narrative reason for discharge, and [change] the [reenlistment] code.  However, we do not believe the AFDRB's findings in any way exonerate [plaintiff] or undermine the gravity of the offense of which he was charged.  . . .  The AFDRB had limited remedies and gave the ones they had.  They did not and could not decide whether there was an error or injustice that supported the much broader remedies requested of this panel.

Id. at 5.  Finally, addressing plaintiff's request for an evidentiary hearing, the AFBCMR stated:

Even if an evidentiary hearing might assist in [determining what Captain Brand told plaintiff], the point is our decision is not primarily based upon the specific content of that advice or even whether there was ineffective counsel.  Whether [plaintiff] was given good or even brilliant legal representation, the Board concludes he fundamentally understood the deal he was offered and we are not convinced he would have made a different choice had he been given different counsel.  Since our ultimate conclusion is based upon our unwillingness to speculate as to what would have happened had the case proceeded to trial and the fact that [plaintiff] no longer has the [under other than honorable conditions] discharge he alleges he did not understand he faced, an evidentiary hearing is not necessary since it would not change our view of what additional remedy is appropriate.

Id.

## G.  Return to the United States Court of Federal Claims

After the AFBCMR issued its decision, the parties returned to the Court of Federal Claims for further proceedings.  Plaintiff initially filed a motion to remand the case to the AFBCMR for a second time on December 2, 2007, which was followed by defendant filing a combined motion to dismiss and motion for judgment on the administrative record and plaintiff

filing a cross-motion for judgment on the administrative record.[21]  The parties have completed briefing on these motions.  The court deems oral argument unnecessary.

## II.  STANDARD OF REVIEW

### A.  Motion to Dismiss for Failure to State a Claim

Defendant filed a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6).  A motion to dismiss tests the sufficiency of a complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor.  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).  The Supreme Court recently clarified the degree of specificity with which a plaintiff must plead facts sufficient to survive such a motion in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 1964-65 (citation omitted).  The Supreme Court explained that although a complaint need not contain "detailed factual allegations," id. at 1964, the "factual allegations must be enough to raise a right to relief above the speculative level," id. at 1965.  "Once a claim has been stated adequately, it may be supported

_____

[21]  In a September 14, 2007 order, the court directed plaintiff to file a "dispositive motion" by December 3, 2007, and directed defendant to file a response and "cross-motion" thereafter.  Instead of filing a dispositive motion, plaintiff filed the instant motion for remand.  Such a motion is not dispositive because there is no guarantee that the resolution of the motion would dispose of the case and lead to the entry of judgment.  Defendant, conforming to the court's directions, treated plaintiff's motion to remand as a dispositive motion and filed a combined motion to dismiss, "cross motion" for judgment on the administrative record, and response in opposition to plaintiff's motion for remand.  Plaintiff, instead of filing a reply in support of its motion for remand and response to defendant's motions to dismiss and for judgment on the administrative record, filed a combined cross-motion for judgment on the administrative record and response in opposition to defendant's motions to dismiss and for judgment on the administrative record.  In its reply brief in support of its motions, defendant contends that plaintiff waived any arguments he did not raise in his initial dispositive motion (i.e., the motion for remand).  See Def.'s Reply Br. Supp. Its Mot. Dismiss & Mot. J. Administrative R. 1-2.  As noted in its June 4, 2008 order, the court characterized defendant's waiver argument as a response in opposition to plaintiff's cross-motion for judgment on the administrative record and permitted plaintiff an opportunity to respond to this argument in a reply in support of its cross-motion.  Although the court understands the basis of defendant's waiver argument, it concludes that the parties are best served by a consideration of the merits of all of the motions before it.  Moreover, ultimately, the procedural posture of this case does not change the underlying issues before the court, nor the court's resolution of those issues.

by showing any set of facts consistent with the allegations in the complaint."[22]  Id. at 1969. Indeed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982).

### B.  Motions for Remand and for Judgment on the Administrative Record and the Correction of Military Records

Along with plaintiff's motion for remand, the parties filed cross-motions for judgment on the administrative record pursuant to RCFC 52.1, seeking to either uphold or overturn the AFBCMR's June 29, 2004, and August 9, 2007 decisions declining to correct plaintiff's military record as requested.  The AFBCMR's decisions were authorized by 10 U.S.C. § 1552 (2000 & Supp. II 2003), which allows for the correction of military records "to correct an error or remove an injustice."  The court "'will not disturb the decision of [a] corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence.'"  Barnes v. United States, 473 F.3d 1356, 1361 (Fed. Cir. 2007) (quoting Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)); accord Sanders v. United States, 594 F.2d 804, 811 (Ct. Cl. 1979) (en banc), superseded in part by statute, 10 U.S.C. § 628 (2000 & Supp. I 2002), as recognized in Richey v. United States, 322 F.3d 1317, 1323-24 (Fed. Cir. 2003).  The Court of Federal Claims does not sit as "a super correction board."  Skinner v. United States, 594 F.2d 824, 830 (Ct. Cl. 1979).

In ruling on a motion for judgment on the administrative record, the court makes "factual findings . . . from the record evidence as if it were conducting a trial on the record."  Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005);[23] see also id. at 1356 ("[J]udgment on the administrative record is properly understood as intending to provide for an expedited trial on the administrative record.").  The court's review in military pay cases is not limited to the administrative record but may also encompass de novo evidence.  Bray v. United States, 515 F.2d 1383, 1390 (Ct. Cl. 1975) (per curiam); Beckham v. United States, 375 F.2d 782, 785 (Ct. Cl. 1967).  "[D]eference is accorded the judgment and expertise of the administrative decision-maker by limiting judicial intervention only to those instances where the administrative decision, on the basis of all the evidence, was arbitrary, capricious, unsupported by substantial evidence, or inconsistent with applicable statutes or regulations."  Bray, 515 F.2d at 1391; see also Sanders, 594 F.2d at 814 (noting that a court is not to substitute its judgment for that of the correction board "when reasonable minds could reach differing conclusions"); cf. Dodson v. U.S. Gov't, Dep't of the Army, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are

---

[22]  In so holding, the Supreme Court determined that the "no set of facts" language set forth in Conley, 355 U.S. at 45, "has earned its retirement," Bell Atl. Corp., 127 S. Ct. at 1969.

[23]  The decision in Bannum was based upon RCFC 56.1, which was abrogated and replaced by RCFC 52.1.  RCFC 52.1, however, was designed to incorporate the decision in Bannum.  See RCFC 52.1, Rules Committee Note (June 20, 2006).

presumed to act lawfully and in good faith . . . , and the military is entitled to substantial
deference in the governance of its affairs."). On the other hand, "[a] naked conclusion and mere
recitation that the opinion is based upon all of the evidence without an analysis of the evidence in
writing . . . is inimical to a rational system of administrative determination and ultimately
inadequate." Beckham v. United States, 392 F.2d 619, 622-23 (Ct. Cl. 1968); see also id. at 623
(noting that the court could not accord a correction board's "'summary and sketchy findings and
reasoning'" the weight it otherwise would have given the board's decision (quoting Loral Elecs.
Corp. v. United States, 387 F.2d 975, 980 (Ct. Cl. 1967))).

In this case, the parties dispute whether the AFBCMR properly determined that an
evidentiary hearing was unnecessary and whether the decisions of the AFBCMR were supported
by substantial evidence. See, e.g., Pl.'s Mem. P. & A. Supp. Pl.'s Mot Appropriate Relief ("Pl.'s
Remand Mem.") 5; Def.'s Mot. Dismiss, Cross Mot. J. Administrative R., & Resp. Pl.'s Mot.
Remand ("Def.'s Mot.") 1; Pl.'s Mem. P. & A. Supp. Pl.'s Cross Mot. J. Administrative R. &
Opp'n Def.'s Mot. Dismiss & Mot. J. Administrative R. ("Pl.'s Cross-Mot. Mem.") 8.
Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (internal
quotation omitted), cited in Dixon v. Dep't of Transp., FAA, 8 F.3d 798, 804 (Fed. Cir. 1993).
"Because '[t]he substantiality of evidence must take into account whatever in the record fairly
detracts from its weight,'" the court must evaluate the entire record, "bear[ing] in mind that
'[e]xaggeration, inherent improbability, self-contradiction, omissions in a purportedly complete
account, imprecision, and errors detract from the weight to be accorded the evidence upon which
an administrative board bases its decision.'" Dixon, 8 F.3d at 804 (quoting Spurlock v. Dep't of
Justice, 894 F.2d 1328, 1330 (Fed. Cir. 1990)). However, when evaluating the administrative
record, the court is not to reweigh the evidence but instead must look to see if exaggeration,
improbability, self-contradiction, omissions, imprecision, or errors "detract from the weight of
that particular evidence." Id. The court may only overturn the AFBCMR's decision if the
detraction is of such a magnitude that "a reasonable fact-finder would not find the charge proved
by a preponderance of evidence . . . ." Id.

## III. DISCUSSION

### A. The AFBCMR Was Not Required to Conduct an Evidentiary Hearing

Plaintiff contends that the only way for the AFBCMR to ascertain the truth of his
allegations of ineffective assistance of counsel is to convene an evidentiary hearing. Pl.'s
Remand Mem. 6-7. According to plaintiff, "[s]tatements and affidavits are fine for some
purposes but where parties utter statements and affidavits in order to support their self interest
which are manifestly in conflict, only the cauldron of under oath, oral testimony subject to cross-
examination will do." Id.

Proceedings before the AFBCMR are governed by statute and regulation. Pursuant to 10
U.S.C. § 1552(a)(3), corrections to a military record by the AFBCMR "shall be made under

procedures established by" the Secretary of the Air Force.  These procedures established by the Secretary are published in title 32, chapter VII, part 865, subpart A of the Code of Federal Regulations.  See 32 C.F.R. § 865.0 (2002).  The regulations provide that the AFBCMR "normally decides cases on the evidence of the record," but that it "may, in its discretion, hold a hearing or call for additional evidence or opinions in any case."  Id. § 865.2(c).  More specifically, with respect to hearings, the regulations provide: "The Board in its sole discretion determines whether to grant a hearing.  Applicants do not have a right to a hearing before the Board."  Id. § 865.4(f).  Thus, neither statute nor regulation require the AFBCMR to conduct an evidentiary hearing, leaving the decision to conduct such a hearing within the "sole discretion" of the AFBCMR.  See also Flute v. United States, 535 F.2d 624, 628 (Ct. Cl. 1976) ("A hearing is not required by statute, but is within the [AFBCMR]'s discretion."); Armstrong v. United States, 205 Ct. Cl. 754, 764 (1974) ("In addition, the statute empowering the [AFBCMR], and the applicable regulations, do not require applicants be given a hearing, leaving the matter to the [AFBCMR]'s discretion." (footnote omitted)).

Given the discretionary nature of the AFBCMR's decision to conduct an evidentiary hearing, the United States Court of Claims, the predecessor of the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), concluded that it would "not hold the denial of a hearing improper where plaintiff failed to show, based on the documentation supporting the application, that the [AFBCMR] acted arbitrarily in denying the hearing."  Armstrong, 205 Ct. Cl. at 764; accord Flute, 535 F.2d at 628 ("Plaintiff has not shown that the denial of a hearing was arbitrary or capricious or that it was based on any erroneous facts . . . .").  Subsequently, both this court and its predecessor, the United States Claims Court, have summarized this precedent as requiring plaintiff to show that the AFBCMR's denial of an evidentiary hearing was unreasonable.  See Strickland v. United States, 36 Fed. Cl. 651, 657 (1996) ("The AFBCMR has discretion in granting a hearing and the AFBCMR's decision will be upheld if reasonable." (citation omitted)); Bell v. United States, 32 Fed. Cl. 259, 264 (1994) ("The AFBCMR's decision to grant a hearing is within its sound discretion and will be upheld if reasonable."); Lyons v. United States, 18 Cl. Ct. 723, 729 (1989) ("Plaintiff has not presented any evidence to suggest that a denial of a hearing in this case was unreasonable."), aff'd, 907 F.2d 157 (Fed. Cir. 1990) (unpublished table decision).  In these three cited cases, the court determined that the AFBCMR's decision to forgo a hearing was reasonable because the record before the AFBCMR was sufficient.  See Strickland, 36 Fed. Cl. at 657 ("The AFBCMR's decision was reasonable because plaintiff's case was adequately documented."); Bell, 32 Fed. Cl. at 264 ("As a matter of law, the AFBCMR's decision to proceed without a hearing was reasonable.  The record before the AFBCMR in this case was extensive."); Lyons, 18 Cl. Ct. at 729 n.8 (noting that "in denying the request for a hearing, the AFBCMR stated that it had 'thoroughly reviewed [plaintiff's] complete submission, and . . . [did] not find that a personal appearance with or without counsel [would] materially add to [its] understanding of the issue(s) involved'").

Similarly, in this case, the AFBCMR had an extensive record to consider, including the witness statements and other notes generated during the criminal investigation of plaintiff; plaintiff's charge sheet; documents from Captain Brand's investigation of plaintiff's case;

plaintiff's Chapter 4 discharge request, the supporting memorandum, and documentary evidence of plaintiff's character and service record; the affidavits and other documents generated during the investigation of Captain Brand's conduct by the Air Force Legal Services Agency; the transcript of testimony before the AFDRB; the decision of the AFDRB; four advisory opinions; and plaintiff's responses to those advisory opinions.  Indeed, in its June 29, 2004 decision, the AFBCMR explicitly found that plaintiff's case was "adequately documented" and concluded that a hearing would not "materially add to [its] understanding of the issues involved."  AR 344.  The AFBCMR did not retreat from this finding in its August 9, 2007 decision, concluding that a hearing was unnecessary because it was clear to the AFBCMR, in considering the record before it, that there was no error or injustice in plaintiff's case because plaintiff understood the consequences of a Chapter 4 discharge in lieu of court-martial when he made his request, regardless of the quality of advice he received from Captain Brand.  See id. at 4-6.  Given the extent of the record and the AFBCMR's stated rationale, the court concludes that the AFBCMR was not arbitrary, capricious, or unreasonable in deciding not to convene an evidentiary hearing.

## B.  Plaintiff Has Failed to Demonstrate That His Separation Was Involuntary

To state a claim for which relief can be granted in a case seeking back pay pursuant to 37 U.S.C. § 204 (2000),[24] a plaintiff's separation from the military must have been involuntary.  See Metz, 466 F.3d at 998 (concluding that a plaintiff no longer on active duty "must assert and ultimately establish that his separation was involuntary in order to fit within the scope of, and take advantage of, the money mandating status of § 204, or else his claim falls for failure to state a claim upon which relief can be granted").  It is well-established that the court must presume that plaintiff's separation was voluntary.  See id. at 999-1000 (noting that plaintiff's "separation [was] presumed to be voluntary according to the statements made in [his] Request for Discharge"); Carmichael v. United States, 298 F.3d 1367, 1372 (Fed. Cir. 2002) ("A presumption of voluntariness generally exists where an employee tenders his resignation or retires . . . .").  However, "[a]n otherwise voluntary resignation or request for discharge is rendered involuntary if it is submitted under duress or coercion, or results from misrepresentation or deception on the part of governmental officers."  Tippett v. United States, 185 F.3d 1250, 1255 (Fed. Cir. 1999), abrogated in part on other grounds by Fisher v. United States, 402 F.3d 1167 (Fed. Cir. 2005) (en banc portion), as recognized in Metz, 466 F.3d at 997-98 (applying the en banc decision in Fisher to hold that the voluntariness of a separation is not a jurisdictional inquiry); see also Carmichael, 298 F.3d at 1372 (describing the three-part test for determining duress or coercion; Sinclair v. United States, 66 Fed. Cl. 487, 494-95 (2005) (describing the

---

[24]  As defendant notes, plaintiff does not cite 37 U.S.C. § 204 in his complaint.  See Def.'s Mot. 6 n.2.  However, because 37 U.S.C. § 204 is the only money-mandating statute that could provide the basis for the relief sought by plaintiff, the court presumes that plaintiff's claim for back pay is premised on 37 U.S.C. § 204.  See Martinez v. United States, 333 F.3d 1295, 1315 (Fed. Cir. 2003) (holding that 37 U.S.C. § 204 is money-mandating); see also Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006) (noting 37 U.S.C. § 204's "money-mandating status").

analyses for determining misrepresentation and deception).  In the instant case, plaintiff's claim of ineffective assistance of counsel implicates both types of wrongful government conduct– duress or coercion and misrepresentation or deception.  Thus, for plaintiff's separation to be involuntary, he must have received ineffective assistance of counsel from Captain Brand that caused him to pursue a Chapter 4 discharge in lieu of court-martial.  In other words, plaintiff must show that he had no choice but to pursue a Chapter 4 discharge due to Captain Brand's ineffective assistance.

"[W]hen faced with a motion to dismiss raising the voluntariness issue," the court is required "to apply [its] standard of review" to the decision of the correction board.  Metz, 466 F.3d at 998.  Here, the AFBCMR explicitly addressed whether Captain Brand provided ineffective assistance of counsel such that plaintiff should be reinstated to the Air Force to face court-martial.  Accordingly, pursuant to Metz, if the court finds that the AFBCMR's determination on this issue was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence, then the court must conclude that plaintiff's separation was voluntary.

The AFBCMR twice opined on whether plaintiff received ineffective assistance from Captain Brand.  First, in its June 29, 2004 decision, the AFBCMR concluded that "[o]ther than his own assertions, [plaintiff had] provided no persuasive evidence showing he was miscounseled, that his decision to request separation in lieu of trial was coerced in any way, or that his commanders abused their discretionary authority when they accepted his offer and approved his discharge."  AR 343.  Then, in its August 9, 2007 decision, the AFBCMR further concluded that investigation of the Air Force Legal Services Agency "establish[d] by a preponderance of the evidence [that plaintiff] was not the victim of ineffective assistance of counsel" and that plaintiff was "properly advised and put on notice of the consequences of his voluntary request for administrative separation in lieu of court-martial and that he could receive an under other than honorable conditions discharge."  Id. at 4.  In reaching these two conclusions, the AFBCMR relied upon three comprehensive discussions of plaintiff's ineffective assistance of counsel claim: (1) the investigation of Captain Brand's conduct by the Air Force Legal Services Agency, including both Captain Swan's report and the legal review of Captain Swan's report by Lieutenant Colonel Johnson-Naumann, id. at 3 (referring to the report and legal review at AR 26-29, 31-42); (2) the advisory opinion provided by Colonel McCord, the Staff Judge Advocate of the Air Force Personnel Center, an opinion apparently rendered without access to Captain Swan's report or the subsequent legal review, id. at 341-42 (referring to the advisory opinion at AR 531-35); and (3) the advisory opinion provided by Colonel Druschel, the Chief of the Military Justice Division of the Air Force Legal Operations Agency, id. at 2-3 (referring to the advisory opinion at AR 252-55).

In her advisory opinion, Colonel McCord did not purport to analyze plaintiff's claim of ineffective assistance of counsel pursuant the two-part test enunciated by the Supreme Court in Strickland v. Washington.  Nor did she measure Captain Brand's conduct against the Air Force Rules of Professional Conduct or the Air Force Standards of Criminal Justice.  Instead, Colonel McCord measured Captain Brand's conduct against "the presumption of regularity that the

government official in question discharged his duties in good faith and in accordance with the law." Id. at 532.  Colonel McCord found nothing in the case file supporting plaintiff's allegations that Captain Brand did not adequately investigate plaintiff's case or rebutting Captain Brand's statements to the contrary.  Id.  In addition, she found evidence in the case file to support Captain Brand's assertion that he did not coerce plaintiff into submitting a Chapter 4 discharge request.  Id. at 533.  Finally, Colonel McCord found that the AFDRB's decision did not support plaintiff's contention that Captain Brand's advice to plaintiff to pursue a Chapter 4 discharge was fundamentally flawed.  Id. at 533-34.  Altogether, Colonel McCord rejected all of plaintiff's contentions that Captain Brand provided him with ineffective assistance.

In contrast to Colonel McCord, Captain Swan, Lieutenant Colonel Johnson-Naumann, and Colonel Druschel all analyzed plaintiff's claims of ineffective assistance of counsel utilizing the two-part test set forth in the Supreme Court's decision in Strickland v. Washington.  Id. at 27-29, 37-40, 253-55.  Although Strickland v. Washington concerned the effectiveness of civilian counsel during sentencing proceedings, 466 U.S. at 686, the Supreme Court later concluded that the two-part test was applicable in determining the effectiveness of counsel in reaching plea agreements, see Hill v. Lockhart, 474 U.S. 52, 57 (1985), and other courts have applied the test in evaluating the effectiveness of military defense counsel, see Sinclair, 66 Fed. Cl. at 495-96; Metz v. United States, 61 Fed. Cl. 154, 166-67 (2004), rev'd on other grounds, 466 F.3d at 991; see also United States v. Cain, 59 M.J. 285, 294 (C.A.A.F. 2004) (containing a military court's holding that the Supreme Court's two-part test for ineffective assistance of counsel in Strickland v. Washington applied to military counsel).  Pursuant to Strickland v. Washington, a plaintiff alleging ineffective assistance of counsel must demonstrate that (1) "counsel's performance was deficient" such that "counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" and (2) plaintiff was prejudiced by the deficient performance.  466 U.S. at 687.  Under the first prong, a plaintiff "must show that counsel's representation fell below an objective standard of reasonableness," id. at 688, and a court considering an "ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id. at 690.  Under the second prong, a plaintiff "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  A court may consider these two prongs in any order.  Strickland, 466 U.S. at 697.

As noted above, Captain Swan examined the allegations contained within plaintiff's counsel's February 15, 2001 memorandum pursuant to the two-part test from Strickland v. Washington, finding that Captain Brand did not provide ineffective assistance of counsel, as measured against the Air Force Standards for Criminal Justice.[25]  AR 37-40.  Lieutenant Colonel

_____

[25]  The commander of the Air Force Legal Services Agency directed Captain Swan to investigate whether Captain Brand "violated Air Force Rules of Professional Conduct and/or the Air Force Standards of Military Justice in the course of his representation" of plaintiff, focusing on three issues raised by plaintiff's allegations: "whether Captain Brand adequately investigated his client's case; whether Captain Brand properly advised his client about requesting discharge in

Johnson-Naumann concurred with Captain Swan's findings and conclusions. Id. at 27-29. Moreover, Colonel Druschel reached the same conclusion, finding that the evidence in the record supported the conclusion that plaintiff's claim of ineffective assistance of counsel was not well-founded. Id. at 255. The AFBCMR, based upon all four of these reports and advisory opinions–those by Colonel McCord, Captain Swan, Lieutenant Colonel Johnson-Naumann, and Colonel Druschel–and its own review of the record, concluded that plaintiff had not shown that Captain Brand provided him with ineffective assistance of counsel. AR 4, 344. The court finds that the AFBCMR's conclusion is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

As noted in the reports and advisory opinions, the evidence from October 2000 through December 2000–i.e., the time period that (1) the Air Force investigated and charged plaintiff; (2) plaintiff and Captain Brand discussed the options available to plaintiff; (3) plaintiff decided to pursue a Chapter 4 discharge; (4) Captain Brand and Staff Sergeant Johnson investigated plaintiff's case; and (5) the Air Force was considering plaintiff's Chapter 4 discharge

---

lieu of trial; and whether any advice Captain Brand provided his client about the impact of an under other than honorable conditions discharge was incorrect." AR 16. Because these issues directly bear on whether Captain Brand provided plaintiff with ineffective assistance, Captain Swan properly used the Air Force Standards of Criminal Justice as a guidepost to determine whether Captain Brand provided ineffective assistance to plaintiff under the first part of the two-part test set forth in Strickland v. Washington. See Strickland, 466 U.S. at 688 (noting that the Sixth Amendment's right to counsel "relies . . . on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." (citation omitted)). Applying the two-part test, Captain Swan concluded that plaintiff's allegations were not substantiated. AR 37-40. Thus, Captain Swan's report directly responded to plaintiff's ineffective assistance of counsel allegations. Moreover, Lieutenant Colonel Johnson-Naumann's legal review of Captain Swan's report did not refer at all to the Air Force Standards of Criminal Justice in determining that the report was legally sufficient. Id. at 27-29. And, upon reviewing Captain Swan's report and Lieutenant Colonel Johnson-Naumann's legal review, the commander concluded that "the evidence [did] not support the allegations against Captain Brand and that no violation of either the Air Force Rules of Professional Conduct or the Air Force Standards of Criminal Justice occurred." Id. at 12 (emphasis added). The commander's conclusion is in clear harmony with Captain Swan's conclusion that Captain Brand did not provide plaintiff with ineffective assistance. The fact that the Judge Advocate General did not mention the specific allegations of ineffective assistance of counsel or the specific conclusions by Captain Swan, Lieutenant Colonel Johnson-Naumann, and the commander that there was no ineffective assistance of counsel does not render those conclusions moot. Indeed, contrary to plaintiff's counsel's contention, see id. at 257, 541, findings based on ethical rules can form the basis for ascertaining whether Captain Brand's representation of plaintiff was reasonable, Strickland, 466 U.S. at 688.

request–indicates that Captain Brand adequately investigated plaintiff's case, that plaintiff was fully aware of the consequences of both proceeding to court-martial and pursuing a Chapter 4 discharge, and that plaintiff determined, after weighing the respective consequences, that a Chapter 4 discharge was the better option.  This evidence includes Captain Brand's discovery requests, id. at 161-64, witness lists, id. at 173-74, witness request, id. at 172, and memorandum concerning an additional discussion with plaintiff about pursuing the Chapter 4 discharge, id. at 175.  In addition, the primary piece of evidence from this time period is plaintiff's Chapter 4 discharge request, which reflected plaintiff's understanding (1) that he could "be discharged under other than honorable conditions"; (2) of the possible consequences of such an adverse discharge, including the loss of veterans' benefits; and (3) that if tried by a special court-martial, he "could receive a punitive discharge from the court."  Id. at 165.  Moreover, in his memorandum in support of plaintiff's Chapter 4 discharge request, Captain Brand represented that he "thoroughly reviewed the facts and circumstances behind the proposed charges," discussed "every aspect of the case and the ramifications of each of its potential outcomes," and determined that "a Chapter 4 discharge (whatever service characterization ultimately attaches) [would] fairly serve the interests of both the government" and plaintiff.  Id. at 421.  He also described the relevant extenuating and mitigating circumstances in plaintiff's case, explained how a Chapter 4 discharge was a "reasonable alternative to a court-martial conviction," and how such a discharge was in the best interests of the Air Force and the alleged victims.  Id. at 421-23.  This substantial, contemporaneous evidence supports the AFBCMR's conclusion that Captain Brand did not provide plaintiff with ineffective assistance.

In addition to the substantial, contemporaneous evidence, the AFBCMR's conclusion is supported by the sworn statements of Captain Brand and Staff Sergeant Johnson from July 2001 and some of plaintiff's statements from his June 26, 2001 electronic mail message.  See id. at 177-79, 190-94.  The remaining evidence in the record that plaintiff contends supports his ineffective assistance allegations dates from much later in time.  For example, plaintiff relies upon his testimony and the testimony of his wife–both of whom can hardly be described as disinterested or unbiased in the outcome of this case–before the AFDRB, which occurred on November 22, 2002, almost two years after Captain Brand's representation of plaintiff.  See Pl.'s Cross-Mot. Mem. 7 (citing selected portions of the testimony before the AFDRB).  Plaintiff also relies upon his February 2007 statement, which was prepared more than six years after the representation.  See id. (citing selected portions of plaintiff's statement).  In Strickland v. Washington, the Supreme Court indicated that courts must consider the reasonableness of a counsel's conduct as "viewed as of the time of counsel's conduct."  466 U.S. at 690.  Because the testimony before the AFDRB and plaintiff's statement contain recollections of events occurring two to six years earlier, they are far less reliable and credible than the contemporaneous evidence and the evidence prepared within eight to ten months of Captain Brand's representation of plaintiff.  Indeed, in comparing this evidence to the contemporaneous evidence, it is clear that plaintiff believed in December 2000 that it was in his best interest to pursue a Chapter 4 discharge and that he later came to regret that decision.  As the Federal Circuit has explained on several occasions, "a choice is not involuntary simply because an employee is faced with an inherently unpleasant situation or his choice is limited to two unpleasant alternatives . . . ."

Terban v. Dep't of Energy, 216 F.3d 1021, 1026 (Fed. Cir. 2000); accord Covington v. Dep't of HHS, 750 F.2d 937, 942 (Fed. Cir. 1984); Taylor v. United States, 591 F.2d 688, 692 (Ct. Cl. 1979); see also Sinclair, 66 Fed. Cl. at 493 (finding that "regret" did not amount "to involuntary acceptance of Defendant's terms"); Colon v. United States, 32 Fed. Cl. 481, 490 (1994) ("The risks between the two unattractive alternatives available to plaintiff were not hidden.  They were open and clear.  Plaintiff now regrets the alternative he chose and seeks to have the court obliterate that choice . . . .  But the presumption of voluntary which attaches to a signed resignation is not rebutted merely because an unattractive, but possible, risk comes to pass.  Hindsight does not serve to convert a voluntary resignation into an involuntary resignation."); cf. Pl.'s Cross-Mot. Mem. 8-9 (containing plaintiff's hindsight argument that any defense counsel presented with this plaintiff in these circumstances would have recommended proceeding to court-martial); AR 350-51 (containing, in his February 15, 2001 memorandum, counsel's identical hindsight contention).

Moreover, the court finds the arguments advanced by plaintiff in response to the AFBCMR's August 9, 2007 decision to be unavailing.  Plaintiff first contends that the AFBCMR was unconcerned whether plaintiff received ineffective assistance of counsel because plaintiff understood the deal he was offered and because plaintiff would have sought the same deal if he were represented by different counsel.  Pl.'s Remand Mem. 5 (citing AR 5-6); accord Pl.'s Cross-Mot. Mem. 9-10.  Although not expressly stated in its decision, the AFBCMR was clearly making a prejudice determination, which it was entitled to do pursuant to Strickland v. Washington.  See 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").  Furthermore, as stated above, the record contains substantial evidence indicating that plaintiff understood the deal he was making for an administrative discharge in lieu of court-martial.  The fact that the potential negative consequences to plaintiff of the deal were realized does not alter plaintiff's initial understanding of those consequences.

Plaintiff then argues that the AFBCMR did not give the decision of the AFDRB sufficient weight, contending that the AFDRB decision "was clearly grounded in the view that Plaintiff had gotten bad legal advice."  Pl.'s Remand Mem. 6 (citing AR 3-4, 195-251).  Plaintiff is mistaken.  The AFDRB merely "noted the possible incorrect advice given [plaintiff] by his defense counsel" as one of several factors contributing to its conclusion that "there was sufficient mitigation and extenuation to substantiate upgrade of the discharge and change the reason for the discharge."  AR 196 (listing the other factors as plaintiff's eighteen years of outstanding service, the lack of eyewitnesses, the information submitted by plaintiff, plaintiff's testimony, and the information in the record).  In fact, the AFDRB concluded that plaintiff's Chapter 4 "discharge was consistent with the procedural and substantive requirements of the discharge regulation and was within the discretion of the discharge authority."  Id.  For this reason, the AFDRB concluded only that there was an inequity in plaintiff's case, and not an impropriety.  Id.; see also 32 C.F.R. § 865.120(a) (noting that "[t]he objective of a discharge review is to examine the propriety and equity of the

applicant's discharge and to effect changes, if necessary"); id. § 865.120(b) (defining what constitutes an "impropriety"); id. § 865.120(g) (defining what constitutes an "inequity"). Because the AFDRB may only "change the discharge reason or . . . issue a new character of discharge," id. § 865.105(a), its authority is more limited than that granted to the AFBCMR. Compare id. § 865.105(b) ("The [AFDRB] is not authorized to revoke any discharge, to reinstate any person who has been separated from the military service, or to recall any person to active duty."), with id. § 865.4(*l*)(4) (requiring the AFBCMR to determine "[w]hether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what corrections are needed to provide full and effective relief"). Thus, the AFBCMR accorded the decision of the AFDRB sufficient weight.

In sum, because the court upholds the AFBCMR's decision that plaintiff did not receive ineffective assistance of counsel from Captain Brand, it must conclude that plaintiff's separation from the Air Force was voluntary. Accordingly, plaintiff has failed to state a claim in the Court of Federal Claims upon which relief can be granted.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** plaintiff's motion for remand; **GRANTS** defendant's motion to dismiss and motion for judgment on the administrative record; and **DENIES** plaintiff's motion for judgment on the administrative record. The clerk shall enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge